case number 23-3074 et al. United States of America v. Jeffrey Scott Brown at balance. Mr. Madden for a balance Jeffrey Brown, Mr. Boyle for a balance Peter Schwartz, Mr. Schieffelbein for a balance Marcus Malley, Mr. Andrews for the appellee. Good morning counsel. Good morning your honors. Your pleased to court Jerry Madden on behalf of Jeffrey Scott Brown. There are two issues in this appeal. First is whether the court views its discretion because the sentence to Mr. Brown was disproportionate to other more culpable bad actors. The second is whether the enhanced sentence for using a deadly and dangerous weapon was error. We'll rely on our brief as to the first issue and focused on the enhanced sentence. Mr. Brown was convicted of violating 18 U.S.C. 111a which makes it illegal to forcibly assault a government official involved in the performance of an official duty. Mr. Brown received an enhanced sentence under section 111b for using pepper spray. Enhanced sentence is appropriate where the weapon is used, where there's a use of a deadly or dangerous weapon in violation of 111a. District Court denied the motion for acquittal saying only that the pepper spray could have reached the officers. The court did not go through the analysis. It should have under Arrington, under the United States v. Arrington, from this court in 2020, all it ruled was pepper spray could have reached the officers. Of course this court applies the same standard and the standard is considered to the like most favorable to the government. Could a reasonable juror have concluded that an element was proved beyond a reasonable doubt? Under Arrington there's a three-part test. The first step is to decide whether pepper spray is inherently dangerous. If it is not, then the second step is the object must be capable of causing serious bodily injury or death to another person. And if the answer to that is yes, the government still needs to prove that in fact the defendant used the weapon in that meeting. So step one, pepper spray is not inherently dangerous. The testimony of the Metropolitan Police Department was uniform that pepper spray can be used in the lowest level of enforcement. Not inherently dangerous when used in certain ways, but it is inherently dangerous when used in other ways. Exactly, your honor. Okay, so then there's a fact question for the jury whether it was used, essentially did they have to decide whether it was used in a way that made it inherently dangerous or not? Correct. So then they found that it was, the record at least, assume the facts in the light most favorable to their verdict, and so it was used, if they could find that it was used within the dangerous distance, so too closer than the footage that seemed to not have risk, but then they could have found it was used in a dangerous way. Yes, so the question is whether a reasonable juror, a reasonable juror could have found that pepper spray, the way it was used, was deadly or dangerous. Right, and so what I think they defined was how close the folks were to the officers. Right, exactly, your honor. So my client, first of all, was there for a very short period of time, somebody he knew came to spray. Short doesn't really matter. That's true, but he was at least three rows behind the police blocking the tunnel. Somebody handed him a can of spray, he sprayed it in the air, and so the question is that, is that using... If you look at that video and you think that it looks like it's less than three feet, then your client, the verdict would be appropriate, correct? No, I don't think so, no. Would you even say you disagree that if it was used in a way that, used in an unsafe way, that it would be a dangerous weapon? Yes. Closer than three feet to somebody? Yes, your honor, but the testimony of the police officers is that it can be used in the lowest level enforcement. You spray somebody in the eye, it's not going to cause permanent eye damage, it's not going to cause extreme physical pain. It can, and it can. No, but there's no testimony... There was a 9 out of 10 pain level. The testimony from the police officer, one of them was that... Was there another one who said it was a 9 out of 10 pain level? No, no. No, even if the police officer was three feet away, and he sprayed it at the police officers without any effective gear, that still wouldn't have been deadly or dangerous within the meaning of the jury instructions of what that means, physical, severe physical injury, because these officers were wearing helmets, face masks, gas masks. Was every officer wearing a helmet? Was every officer wearing a face mask at the stand? At that time, yes, your honor. The evidence is... But if the videos showed otherwise, then the jury could conclude it was dangerous. But the video didn't show otherwise. If the video... I saw the videos too, so if the videos showed otherwise and they concluded it was dangerous, right? I'm just asking... I don't believe, no, I mean, I don't believe that's true, your honor, because... You can't say I'm relying on the fact that they were wearing protective gear, if you say, even if they weren't. If a jury could have looked at the video and found an officer or so that had a visor up or didn't have a visor, that's not true. The record says that using a regular can of pepper spray within three feet is what police officers do all the time. It's not... Less than three feet. It wasn't less than three feet. There's nothing in the record that says less than three feet. And even if it was, it's... A can of pepper spray cannot... The record didn't have a... As it was, as it turned out, nobody had measuring tapes on January 6th, and so the question is whether the jury, looking at the video, could have thought it was within that close distance. I disagree, your honor, because, again, pepper spray in itself is not deadly or dangerous. It only becomes deadly or dangerous if something called hydraulic needling occurs, which was the uniform testimony of the police officers, and that is when you use... If you have a can that shoots, like, 12 feet, or it can't shoot three feet. If hydraulic needling actually occurs, that's the position? If it could occur, if it could occur, and the evidence was that it could not occur the way he did it. It's just not possible, and it's unreasonable for a jury to try to... What about... Would you agree that if it caused nine out of ten pain, would that count as a dangerous weapon? No. It has to... If you have to look at the words... Pain level is irrelevant? The definition in the model jury instructions are serious bodily injury is... Caused death, unconscionable extreme physical pain... Okay, good. So... Is nine out of ten extreme physical pain? Nine out of ten, and ten tens the max on the pain scale. I think you'd have to read that in the context of death, or... I understand, and so, is nine out of ten on physical pain, does that qualify? Would a jury decide that qualifies? I do not... Look, I was... As a matter of law... No, I don't believe so. All right, so we would have to write that as a matter of law, nine out of ten, is not sufficient? What I am saying, Your Honor, is that the testimony was a normal can of pepper spray, police use it in the least situation of enforcement, within three feet, in people's... Right in their face. That did not happen here, and because it did not happen here, there could not be any dangerous use within the meaning of what is serious bodily injury. You have to read those words together. You're talking about death, blinding someone, severe physical pain, you know, you cannot read that... You can't read that disproportionate to death, right? No, I'm just asking the factual question here, or I guess the legal question, because you want us to overturn a jury verdict. Correct. As a matter of law, is what you wish us to do, and there was testimony in this case that an officer who had... Was hit with this pepper spray, had nine out of ten pain. But that was not an officer who was in that line were my client. Well, I'm not sure if the jury is required to sort through that and say that this stuff is capable, it doesn't actually have to cause the pain. Your client doesn't actually have to inflict the pain to be guilty, it just has to be capable of inflicting it. So, I'm just trying to understand your position. The testimony about nine out of ten... It's very simple. What do I do with that? If I'm... There's a window here, and I use pepper spray, and you're behind it, that's not using it in a deadly or dangerous manner. If I hold it in the air, and you're wearing a mask, which they were, and you're three feet away, that's not going to... If it burns you, if it makes your eyes water, that's not causing extreme physical pain. It's just... You have to read those words together. You can't separate and say, well, it was painful. If it were that painful, the police wouldn't be allowed to use it for the most minimal level of enforcement. Let me try again. So, if you spray it, it turns out there's some cracks, there's some air ventilation, it brings it around to me, and I say that I had nine out of ten pain from it. I don't believe any officer who was in that line where my client was testified that they had any pain. They don't have to. They don't have to. It's capable of an objective test. So, I'm just asking them a question again. You sprayed, there's a crack, the ventilation, it brings it into my eyes, and it turns out for me it's a nine out of ten pain. As a matter of law, it doesn't count. It has to be used in a manner that could cause injury. If you know it can't cause injury, then it's not deadly or dangerous. Period. That's our position. Thank you. Questions? Mr. Boyle? May it please the court, my name is Dennis Boyle, and I represent Peter Schwartz. I'd like to reserve two minutes for rebuttal, if possible. Are you all three doing rebuttal? Mr. Van Dysen, do you want a couple of minutes for rebuttal, too? I reserve a few minutes. Perfect. I just wanted to make sure. No problem. There are a number of issues that we've raised in this case on the appeal, and we don't wish to waive any of those issues at this point in time. However, there are only a couple of issues we'd like to focus upon right now. In view of my colleagues' handling of the pepper spray issue, I think I'll forego that one at this point in time. We would note that we have a similar position. We believe that unless the pepper spray was used by the particular defendant in a manner likely to cause death or seriously bodily harm, it's not a dangerous weapon. We don't think the record shows that in this case, with respect to Mr. Schwartz. Would it matter if, even if the pepper spray were not sufficient, what about your client hurled a folding chair at officers? I did want to talk about the chair a second, if I could. That is different from the pepper spray. If you watched the video, and you saw it the same way I did, it looked as though there was some sort of a lawn chair that came flying from the crowd towards the police officers. I don't think any of the police officers were seriously injured or hurt by the chair. There was no evidence whatsoever as to the size or the weight or the material. Was there evidence that an officer was hit by the chair? Pardon? Wasn't there evidence that an officer was hit by the chair? Yes, the officer who was hit by the chair didn't testify. One of the other officers, I believe, basically said it was just sort of shrugged off. It did no damage. It had no interference with the way the police officer was performing his job. But in any event, a lawn chair is not a weapon. It's not something that's normally used to inflict death or seriously bodily harm. It's not, you know, is it capable of causing pain? I don't think in the circumstances in which it was used in this case, it was. So we would suggest that there's just no evidence that this was a weapon at all. You know, it was something that was thrown as a matter of frustration, that glanced off somebody. But if you're going to say everything is... You wouldn't throw a chair at me? Pardon? If you were to throw the same type of chair at me right now, would that be capable of causing serious injury to me? Well, first of all, Your Honor, I would never do that. I know. I'm clearly guessing this is hypothetical. Okay. From the distance he was from the officers, I don't think he was throwing it at any specific officer. I think that matters. I just feel like if a chair came into my head, that would cause serious injury. There are chairs. Depending on the size, weight, material the chair is made of, it certainly could cause death or serious bodily injury. If it were my office chair and somebody could actually pick it up and throw it, that would be a bit dangerous. But that's quite a bit different from a lawn chair. And I would say this lawn chair is more a matter of debris than it is a weapon. I don't think that if the chair were thrown at you from some distance, it would pose any threat to you whatsoever. Can you address the Fifth Amendment issue? I guess I'll just go straight to the question that I have, which is the government is going to say that this use of the finger is more like getting a key than getting someone's password. And in some ways, that seems to be kind of the way to think about this issue. And what's your response to that?  First of all, we would point to the warrant itself that authorized the seizure of the materials. I can read from the search warrant itself, Essay 10 in the record. While attempting to unlock the device by use of the compelled display of biometric data pursuant to this warrant, law enforcement is not authorized to demand that the aforementioned person state or otherwise provide the password. And this is important. Or identify the specific biometric characteristics, including unique fingerprints or other physical features that may be used to unlock or access the device. There's a difference between a fingerprint that's just used as a fingerprint to identify a suspect and a fingerprint that's used to access a cell phone, particularly when the police officers don't understand or don't know what the biometric device being used is. I think to put things in more perspective, we are all concerned about data security. I talked to, we do have a data security practice. We represent plaintiffs in data security matters. A fingerprint is much safer than a password. It would be odd that a person would lose their, you know, that they would have to compromise their security in order to maintain their Fifth Amendment rights. So, what's the testimonial aspect?  For your Fifth Amendment claim, you have to persuade us that there's a testimonial aspect of placing the finger on the phone's reader. What is the testimonial aspect? What does that have to communicate? The testimony aspect, we would suggest, Your Honor, is the identification of the fingerprint as the biometric device. Communication is not always oral, as the record in this case shows, and as the FBI agent who testified admitted. Mr. Schwartz was tricked into using his finger to open the device. So, it discloses which finger opens the phone. Is that your point? Yes. Yes, or even whether it's a finger that opens the phone. You know, it could also be a facial software. It could have been a password. It could have been anything. And as the search warrant itself indicates, it was the identity. And I know the search amendment is a Fourth Amendment versus Fifth Amendment thing. But I think that aspect of it is key. You can't compel somebody to identify what opens the device. That's what you say was testimonial in the case? Yes. You're not arguing that he essentially was forced to say that this is my phone when his finger opened it up. You're arguing the former, that he was having… I think both are true. I'm confused about what your position is. But you didn't mention the second part. You only mentioned essentially the forced disclosure of what your form of security or password is. And that's correct. I think that these were both communicative events. Number one, it identified his finger as unlocking the phone. And number two, it identified the phone as his phone. At the time, he was under arrest. At the time, we believe he had invoked his right to counsel. And there should have been no further questioning. Did the government use at trial the fact that his finger opened the phone as evidence that the statements on that phone were his? To be perfectly honest, Your Honor, I can't recall any specific testimony in that regard. But obviously, the circumstances surrounding the opening of the phone were presented to the jury. And the… Let me tell you, to violate the Fifth Amendment, it has to be used at trial. Correct. In a testimonial manner. And so that's what I'm trying to ask you is how… How… I understand his objections to them in getting access to his phone at the time of his arrest. But for your Fifth Amendment claim, don't you have to show us that it was used at trial in a testimonial manner? I think the Fifth Amendment, if it leads to evidence that was used at trial, that would be the fruit of the poisonous tree. We would submit that that evidence was put in. The Fifth Amendment violation was put in. But regardless, it unlocked a whole world of information for the government that the government would not have had otherwise. How can it be the fruit of the poisonous tree at trial if it's not a violation of the Fifth Amendment until it's used at trial? I'm not sure that I understand the question. It's a Fifth Amendment violation. The Fifth Amendment violation occurs when the phone is entered. The identification of the phone, the identification of his fingerprint as the device that opens it, is the Fifth Amendment violation. The Fifth Amendment violation was presented at trial. And the consequence of that Fifth Amendment violation is that there was a lot of information in the phone that the government gained access to that it would not otherwise have had, had it not been for the Fifth Amendment violation. So your argument is, but for this Fifth Amendment violation, they wouldn't have been able to put in the actual contents of the phone.  At trial. This is a dangerous chair. That's correct, Your Honor. The government says that is still irrelevant because they would have inevitably discovered the contents of the phone via the second warrant. And I just wanted to hear your argument in response to that. Yeah, we believe that's a conclusory argument. Saying something would be inevitably discovered is not certain in a case like this. Certainly, there is the Fifth Amendment violation. So, you have to accept that before you get to the inevitable discovery. We just don't think there's any evidence here or any even real mention of the fact that this would have been discovered. Do you have, because I did not see it in the joint appendix, but do you have, or does the record contain the affidavit that was used to get the 2021 warrant for a forensic exam here in D.C.? I don't recall offhand. The warrant itself is in the record. Right, but the affidavit, just to figure out if the affidavit was relying on what happened at the initial arrest stage. I don't believe that is in the record. Any other questions? All right, we'll give you a couple minutes for rebuttal. Okay, thank you. Good morning. Good morning, your honors, and may it please the court endeavor to save three minutes for rebuttal. Pepper spray or its equivalent when used outside in a ventilated area from a modest distance for a brief period of time is not a deadly or dangerous weapon. Mr. Malley's conviction on count five is distinct from the prior discussion the court was having, which relates to the incident in the tunnel. Because count five related to what in the eyes most favorable to the government was Mr. Malley spraying pepper spray again outside in a well-ventilated area from a modest distance. Now, I want to talk for a moment about nine out of ten on a pain scale. That testimony was from Officer Boyle, who was on the Lower West Terrace and was the complainant for that particular count. And it is true that he testified he experienced a nine out of a ten on a pain scale. What is not clear from the record, though, is exactly what that was from. In the context of what was happening on January 6th and the general chaos of the Lower West Terrace, the record evidence is clear that Officer Boyle experienced around that same time a number of different bursts of spray. The government did not prove in this case what the canister Mr. Malley was holding contained. It could have contained inert spray. It could have contained a much weaker spray. Again, it is clear that Officer Boyle testified he experienced a nine out of a ten on a pain scale. But it is also clear from the videos and the record that he was experiencing different sprays from different angles right around the same time. It is unreasonable for the jury to credit that testimony as it coming from Mr. Malley. It's a matter of law. In the context of January 6th when, again, there is not evidence of what was in the canister that Mr. Malley had. You're not going to have that in any of the January 6th cases.  And what we also don't have. Multiple sprays and multiple things going on at once. Everybody just gets lucky. If you spray in a group, you get lucky. It's a matter of law. The jury can't find you responsible for that. Not that the jury can't find you responsible for it. But because what the government here is relying on is that nine out of a ten on a pain scale. What the government did not establish is the length of time that Officer Boyle was experiencing that pain. And when the government is saying a nine out of ten is sufficient. How long does it have to last? I think that's a question for the jury here. You're asking for a ruling as a matter of law.  And so I thought, maybe I just misheard you. They didn't show how long the pain lasted. So that somehow as a matter of law makes it impermissible for the jury to find that nine out of ten counts. The question is whether it is reasonable. And simply based on a nine out of a ten pain scale. When we know, based on the other record evidence, that pepper spray is a temporary sensation of incapacitation from pain. What's your best case that it's nine out of ten? I know that's not a record in this case. But assume some other device that causes ten out of ten pain. But it's very brief that that is not sufficient. The question is whether a reasonable jury could find it sufficient. I think somebody could. I thought you were saying that it's unreasonable without evidence of how long it lasts. Because there's evidence that pepper spray is temporary. And what I'd like to draw an analogy here is, for example, the court could pinch its skin. Or perhaps dunk its arm in ice cold water. And might experience a nine out of a ten on a pain scale. But because that's a fleeting pain and is not causing otherwise serious bodily injury. Would that constitute as, for example, ice cold water being a deadly or dangerous weapon. When it causes a nine out of a ten on a pain scale. And there's not evidence of how long that person felt that nine out of a ten on a pain scale. I'm sorry, I'm not understanding your point. How long does it have to be suffered to constitute, to allow a jury to reasonably find that it was a dangerous weapon? I think it has to be lasting enough. I don't know what lasting enough is. For me, if I have a nine out of ten for even a second, that's horrible. Of course it's horrible. So how long? You can't just say enough. That's not a legal test that I can put into an experiment. I think it is up to the jury. We would have to write a legal standard. Everyone in this room, as far as I understand it, agrees serious bodily injury includes extreme physical pain. And so if we're going to write extreme physical pain means X, what do we write?  Correct. I don't think this court can determine a number of seconds for extreme physical pain. Because I think it depends on the instrument that is causing that pain. And that goes back to whether a reasonable jury could find. And again, what we're talking about here is pepper spray, which is a device used by police officers. So it would be something like extreme physical pain must be intense and more than fleeting? I think it has to be more than fleeting. And there's not evidence in this case that the nine out of ten was more than fleeting. And in fact, extreme pain causes someone to pass out. And it wouldn't count because they passed out, so they only felt it briefly? I think depending on the nature of passing out or fainting. I don't want the nature of passing out or fainting. I don't want you to be mean by that. Blackout. If the person blacks out for a brief period of time. Intense pain can cause people to lose consciousness. Correct.  And I think in that case, perhaps that would be enough to cause serious bodily injury or extreme physical discomfort. Because there's something more than just experience. But they only felt it for a second. But there's something more than experiencing just a nine or a ten out of ten. What about a faint? A faint? A faint. I think fainting and passing out would be the same because there's something else in addition to experiencing. Fainting is serious bodily injury? I think it could, depending on what happened. I think, for example, if somebody fainted. So if they just turned a blowtorch on their face for a second, which obviously would cause intense pain. We would have to say, no, that's not enough because they just turned it on for a second. Well, in that case, what we're talking about is a weapon that is probably much closer to a firearm than pepper spray. Because it's deploying actual fire at somebody's face. Which is much more likely to cause serious bodily injury. It's a burning spray, right, at somebody's face. But it's not causing lasting burns. Whereas a torch in somebody's face would at least threaten the use of lasting burns. If a jury had evidence that the pain endured, continued, or would reactivate over the next 24 or 48 hours, then it would be sufficient. That would be sufficient. But what we have here is Officer Boyle talking about the lingering pain. And he's discussing pain that he feels on other parts of his body, particularly in his groin. He discussed the fact that it was difficult for him to use the restroom. There's no evidence that the spray, to the extent that it was spray that came from Mr. Malley, was directed at the officer's groin. So what we don't have here is any evidence of lasting or lingering discomfort. What we have is testimony that pepper spray is briefly incapacitating. And that there was a 9 out of a 10 on a pain scale. But this is pepper spray that was used consistent with how police officers use pepper spray every day in this country. And how courts condone that use of force. Because it doesn't cause serious bodily injury. If we were to assume that a spray from one, we're assuming it's an ordinary pepper spray, wasn't a dangerous weapon. But two people shot at an officer at the same time, and it's a close distance, so it's not way back. And that double intensity caused 9 out of 10 pain. What happens then? Unless there's more lasting or lingering effects from that. Again, what we still have is testimony of brief incapacitation. But as a person, if we had testimony of lasting effects from that. The fact that each person only did a spray that by itself wouldn't cause, under your theory, the type of pain warranting a dangerous weapon, prosecute, charge. But if they did it at the same time as someone else, and the double effect did, did they both get off? Or the fact that you do it at the same, when others are doing it as well. Does that, can a jury take that into consideration? I think a jury could take that into consideration, especially. How does that fit with your legal rule here? That you want us to adopt? Because it would, to the extent that there is, again, more lingering or lasting pain from two effects, if there's evidence to support that. Then the pepper spray, when used in that manner in conjunction with other pepper spray at the same time, would cause that result. There was a lot, there's no question, there was a lot of pepper spray going at these officers at the same time. Correct, Your Honor. Now, just briefly with respect to unanimity, the law here, generally, I understand is against our position. But it's generally against our position because it is, it relies on largely a split decision of the Supreme Court and distinct decisions of this court. And what the Supreme Court, and particularly Justice Scalia said in his concurrence, which was necessary for the morality opinion, was that there is a question when, at some point, a crime becomes such an umbrella crime, that the due process clause would require a jury to find unanimously about what particular act the defendant did that committed that crime. Our position is that 111A is such an umbrella crime because there are markedly distinct divisions between what somebody- Your client, it wasn't as though the government approved different acts. And the jury had to decide, or could split on, which act was done. There's one act. One act. There's one act. No doubt. The jury either found that act or didn't. If they found that act, the question of which verb they would think it most closely approximated is- Since the statute treats them all as equivalently culpable, that would seem to me to be one of those situations where we don't require a unanimous instruction because the jury could either- This is binary. Either found the act happened, was perpetrated by your client, or didn't. There was no question of different acts. Well, there's not a question of different acts if we're looking at temporal periods of time. I believe that's correct. But if we're looking at an action taken by a defendant, and in this case, there was a disagreement about whether Mr. Malley, and his testimony was-  There was a disagreement about what particular action he accomplished. And I think act here has to be linked to the verb that is happening, not just to the when that verb is happening. Here, it's very clear. The jury didn't have to find time. But it's very clear that the jury found something happened at roughly this period of time that Mr. Malley did that made him culpable. But the jury could have found that his presence there in pointing a canister at the officers was forcibly opposing that. And a different subset of jurors could have found that he actually sprayed the officer. And other jurors could have found that he threatened to spray the officers. And threatening to spray the officers would require at least proof of a different mental state. And that's what the government pointed out in footnote 19. Because for a threat, there has to be the specific intent to cause this apprehension of fear in this other person. It's distinct from somebody potentially mere presence on the Capitol, in a place where they know they're not supposed to be, pointing a canister of pepper spray. Another juror might just find that that opposes it. And so the jurors could have found, in this case, given the breadth of different- If the video showed spray coming out. There was a disagreement about whether the video did show spray. And the jury could have found that spray came out. But also the jury could have found that that spray was directed at- The act that they have to find, first of all, is essentially this. A person standing there with this, with the canister, facing the officers. And they can decide how close it was and what the other conditions were. That's the jury's prerogative. And so it's not as though he did this, and then at some later point, he threw a chair, or- They're not deciding two different culpable acts. The culpable act is this. And they get to define what happened out of that. I'm not sure why. Since all the acts are treated as equally culpable under this statute. Because there is a difference between- And I believe the due process clause- And again, this is what Justice Scalia talked about. There's a difference between pointing a canister of pepper spray at officers, and actually deploying that canister of pepper spray. There's a difference between being somewhere, which a jury could have found that his presence there, while pointing a canister was forced because- Senator, under your view of what spraying is? I'm sorry, Your Honor? How is it different if spraying is kind of harmless anyhow, in your view? We're not saying that spraying is harmless. We're saying that the government didn't prove under the context of this case, because the pepper spray was used in a ventilated area for a short period of time from a modest distance. They did not prove that this is capable of causing serious bodily injury or death. That's our point. But the jury could have found that unreasonably, but still have been required to find a difference between actually deploying the spray, and his presence at the Capitol, while armed with something that could have been pepper spray. They could have found that he actually sprayed it in a way that was dangerous. At the same time, that same jury could have found he didn't spray it? Some- Threatened to spray it. Some members of the jury could have found it. But they had to reach unanimity on the dangerous weapon. Our argument is that was an unreasonable verdict. I understand, but they came back with that verdict. Correct. So we're assuming the jury unanimously found that he sprayed it. No. Because- For the purpose of the dangerous weapon. Threatening to spray it would have been sufficient if the jury found that that was. Again, our point is unreasonable. If the jury found that he threatened to spray it, or opposed officers by pointing it in that way, that that could have been a deadly or dangerous weapon. And we're saying that's unreasonable, but jurors could have disagreed on what the particular act was. The point of being spraying, or presence there armed with a canister of what might have been pepper spray. Colleagues have any questions? Mr. Rogers? Thank you, Your Honors. Thank you very much, Counsel. We're in government now.  Good morning. May it please the Court. Peter Andrews for the United States. I'll pick up with the pepper spray issue, which is common to three appellants. And we're focusing on the standard of review here, which is the sufficiency of the evidence. The appellants can only prevail here if they show that no reasonable jury could have concluded that pepper spray, as used by the defendants, is both capable of causing serious bodily injury, and that they use it in a manner capable of causing serious bodily injury. And as I think came out in the discussion with my colleagues, there was evidence in the record from which a reasonable jury could have reached that conclusion, particularly if the jury is drawing reasonable inferences in the government's favor, and looking at the light most favorable to the government. So specifically, you know, pepper spray is capable of causing serious bodily injury for two reasons, one of which is because it can cause nine out of ten pain on a pain scale. We heard that both from the officers who experienced the pain during their training, and then the officers who experienced that same pain on January 6th. That's clearly something that pepper spray is capable of doing. Is there testimony about how long that pain lasts from a spray of several seconds, like seems to be the case for each of these defendants? So if I recall the record, I don't believe there's spray. There's testimony precisely about how long the nine out of ten pain lasts. How long the pain lasts is very much a question of when an officer is able to clear it by, you know, flushing their eyes or getting decontaminated. In the controlled setting of their training, they go right over to the decontamination station and it's washed out. There was testimony from several of the officers that as a result of the spray they suffered on January 6th, they had pain that lingered for up to two weeks, I believe is the testimony, but I don't think that that was nine out of ten spray pain. And there was also, you know, so in addition to the nine out of ten, there was evidence in the record that if used at close range within the minimum safe distance, pepper spray can cause a sort of long-term eye damage that's known as hydraulic needling. So that, under Arrington, that's capable of causing serious bodily injury. The defendants used pepper spray in that manner because a reasonable jury could have looked at the videos and listened to the officer's testimony and concluded that in the context of resisting police officers who are trying to defend the Capitol from a riotous mob on January 6th, members of the mob, Mr. Brown, Mr. Schwartz, Mr. Malley, each used pepper spray within the minimum safe distance to attack officers in a way that could have caused them serious bodily injury. I heard a little bit of, you know, I think the point that some of my colleagues were trying to make is this idea that, well, you know, the spray, the government didn't prove that the spray hit the officers or the government didn't prove that the spray was precisely the cause of their pain. I don't think that's the test under Arrington. I don't think that there's a requirement that the spray or the weapon actually cause serious bodily injury. And I think, you know, sort of by analogy, if you were to fire a projectile at someone and you missed, that doesn't mean you didn't use dangerous or deadly weapons. What if... Go ahead. I was wondering, is it, in determining the effects, pain levels, we don't have, on one hand, we don't ask if they actually caused the pain. It's whether it was capable of causing pain and they used it that way. But then do we, if we have a single person say, well, it hurt me on a 9 out of 10 scale. Is that relevant or do we have to ask sort of objectively or writ large, does it tend to cause that kind of pain? Because it seems a little unfair to say we're not going to require evidence that you actually hit the person or caused the pain to the person. But then if we have an individual, and I'm not saying that here, but I'm just trying to figure out what the right test is, is it whether objectively it can cause that level of pain? Is there evidence about that? Or if the fact that one officer did feel that level of pain, is that sufficient? So as I read Arrington, I think the idea in Arrington is that it is a test that takes into account the physical characteristics of the object. What is the object capable of doing? And then putting that in the context of how the object was actually used. So I think here... Capable of doing to whom, I think is my question. Yeah, I think capable of doing to a person. I think if there's evidence from officers that pepper spray can cause this sort of pain, then I think in a certain factual situation, then you look at, okay, how was it used in a specific factual situation? So for example, I think this would be a closer case if the defendant was 50 feet away from an officer. He fired pepper spray kind of from a long distance. And you might look at that differently. The jury would be in a different position to say, well, that's not really the kind of close-range use of pepper spray that can cause this kind of intense physical pain. But what if in that situation you had an officer who turned out to have a peculiar sensitivity or allergy to this form of pepper spray? Or certain forms of pepper spray, some of which we use that day. A bear spray or something. Would that be sufficient? So, Your Honor, we haven't sort of briefed the question of... You're sort of talking about... It sounds like kind of an eggshell plaintiff. I mean, yeah. You're not going to have an eggshell plaintiff as a police officer. Right. But just assume for some reason you do. And the chair that was thrown was, you know, the little toy chair from someone's child toy. They threw that. It wouldn't cause anybody any injury whatsoever. But it happens to hit somebody and causes very serious harm. I think the rule from Arrington is object-focused and not target-focused. The rule from Arrington looks at the characteristics of the object and how it was used in context. So I don't think... No, because it asks whether that object is capable of causing a qualifying level of harm. And I think at some level you need to know to whom. And so is it most officers,  I don't know how with physical things you'd have an objective officer. Because you had one officer here saying 9 out of 10. And the jury heard from others who said, not how I want to spend my day. Well, I think again, because we're talking about sufficiency review, I think that... Well, they have raised a legal claim here. So I'm trying to understand the legal test under Arrington for what quantum of evidence about to be capable of causing, for these purposes, severe pain. What's our barometer? I think if you have an officer who testifies, pepper spray causes 9 out of 10 pain when I'm subjected to it. That is enough from which a defendant, from which a... If you had every other officer say 4 out of 10. One says 9 out of 10. That might be a different factual scenario. I'm just asking what your position is. Your position just seems to be if you have an officer say that. This is what I'm struggling with. To whom? What is the baseline measurement? So again, I think the evidence presented in this case, in addition to the 9 out of 10 physical pain, we look at all the physical characteristics of pepper spray. That it is designed to incapacitate by causing physical pain. This is not a question of an officer who is sensitive to pepper spray. There was no testimony that that officer was saying, well I have a particular problem with capsaicin. So when you combine that with the common sense understanding of what pepper spray is designed to do, to incapacitate through pain, and then you have an officer say, yeah, that pain is a 9 out of 10 pain, and then you have officers who testify that throughout, as a result of what happened to them on January 6th, they suffered lingering pain that lasted. That is enough for a reasonable jury to conclude that pepper... You agree that the lingering pain, there's no testimony that that was extreme. No, I, yes, we agree. Okay, so, you know, opposing counsel, I think we're just dancing around the issue of what in the world serious bodily injury means, right? So opposing counsel says it must be pain that is intense and more than fleeting. Now, do you disagree with that? That is the legal question in this case. Yes, as a legal matter, the pain does not have to be more than fleeting. The pain has to be extreme physical pain. I don't understand that to require only fleeting, to require something more than fleeting pain. I think, as Judge Millett may have said, I think even a moment of 9 out of 10 pain is an extreme sort of injury that no one wants to suffer, and certainly law enforcement officers do not want to suffer while they are trying to do their jobs. Certainly, sympathetic to that, right? But we're interpreting a statute that says deadly or dangerous, right? And so wouldn't it be a little bit odd if one requirement is deadly, capable of causing death, and then the other is capable of causing really intense pain for one second? No, I don't think that that's a problem. I think it's a broad statute with broad language, and it is designed to provide maximum protection to law enforcement officers. And so, certainly one end of the scale is inherently deadly objects like guns and knives. But at the other end of the scale is the wide class of objects that, when used a certain way, can cause serious bodily injury to the target. And this is a circumstance, you know, the evidence in the record here is that pepper spray can cause that injury. And that and not just because of the 9 out of 10 pain, I should emphasize, there is also this danger of long-term eye damage that can be used within a safe distance, so the jury's verdict could just as easily be supported by that. But there is no in our view, there's no reading of serious bodily injury that requires an extended temporal amount of 9 out of 10 pain, particularly when you're crediting the jury. And one of the defendants, I believe it's the video in the tunnel, says, you know, I was just spraying this above their heads. And I'm just curious what your response is to that. Is it that a jury could have found it was not above their heads, or that it doesn't matter because that would still fit the definition of capable of causing injury, or is it something else? How would you ask us to think about that question? The answer to that is both. Let me just sort of unpack that. I think the first point is that there the dangerous weapon does not need to there's not an element that the dangerous weapon needs to actually contact the officer, be used in a way that specifically damages them. So the fact that he fired the pepper spray and missed and went right over their heads really should not be treated differently in that closed circumstance than if he fired a gun at them in terms of the amount of danger that it could cause. I think the second point is that as a factual matter the jury could have concluded that in that tunnel there was evidence in the record extended discussion from all the police officers in the record that that tunnel was the site of the most close quarters barbaric fighting on January 6th for more than two hours. That in that tunnel even spraying over the head it's a confined space there's nowhere to go. The officers cannot get back. The officers cannot go forward but that is enough to show that the pepper spray was deadly or dangerous. So if there are no further questions about the pepper spray I'm happy to talk about the Fifth Amendment. Unlike a key which can be copied lots of people can have keys to a house a locker or if you actually have a physical key for a phone I guess they could too. There's one thumbprint and when that thumbprint opens that phone that thumbprint says this is my phone and the stuff on that phone is mine too. Why is that not testimonial given the uniqueness of a thumbprint and its immediate connection to this trove of information? A few responses to that your honor. I think the first thing to think about here is the Supreme Court's Fifth Amendment case law draws a distinction between the physical characteristics of a person and the contents of a person's mind. The contents of a person's mind are testimony. You cannot force that out of a defendant and you can't use it against them at trial. But if physical characteristics in a fairly extensive line of cases those are fair game and they're not testimonial. The physical characteristics just reveal sort of very limited physical facts about somebody. Their blood type. I was there or this is who my identity is but if you have if we understand a phone in this day a cell phone in this day and age to be capturing all the thoughts of their mind and their activities and I think you would agree that the police couldn't require him to say that's my phone. That's violent. You can't force them you cannot force them into require them to say I own those content those thoughts on that phone those communications on that phone and then if the fingerprint does the exact same thing why should that be treated differently? So again I think if so physical characteristics can be used to connect a defendant to tangible evidence. For example a gun is recovered on the scene and you take the defendant's fingerprints the fingerprints all over the gun that creates a causal connection between the defendant and the gun. All you would be forcing the person to do in that situation is be fingerprinted and all that tells the government is this is my fingerprint. You're not enlisting them into incriminating themselves in the way that arguably happened in this case. Well again so I'm following you here. So let's take this analogy to something that's a little bit closer. So imagine that the defendant has all of their personal information in a warehouse and the warehouse is locked with a key and the key is found around the defendant's neck. The government can take the key off the defendant can try it in the lock to the safety deposit book to the warehouse and get access to all the information that's within the warehouse. That doesn't raise a Fifth Amendment issue. The fact that the defendant has put all that stuff in there Can they force the person I'm going to imprison you unless you take that off your neck and you go put it in the lock and open it again? No. I think that's a difficult question but I'm not sure that I see the Fifth Amendment relevant. Well, so I think so if you take the government can certainly take the key off the defendant and the government could take his thumbprint off his finger here. No, but the government could take I think the government if the government knows where the safety deposit box is let's stick with the safe deposit box as here the phone is in the defendant's bedroom. So we already know there's a little bit of a connection between them. The government I think could take a defendant to a safety deposit box, take a key off of them or force them to put a fingerprint scanner on that. Again, it's not revealing anything about the contents of the defendant's mind. What if they have a diary? They have a diary and it's modern times and the diary is opened by a thumbprint and they force that thumb on there so they get, there's nothing more revealing of the thoughts of the mind than a diary. Right, but the question because you're not you are accessing the mind through the thumb. Well, you're accessing the defendant's the defendant has chosen to write down the safest way to protect your thoughts is to not write them down, to not reveal the content. The Fifth Amendment isn't about that. Well, but the Fifth Amendment is about forcing the defendant to incriminate him or herself. Right, so the Fifth Amendment I thought you agreed you can't make him say that's my phone. I thought you agreed that you can't make him say that's my phone and then use that as evidence. You can't make him say that. Correct? You cannot make the defendant say that. That's why there's all this stuff you can't even make him say do you use a password or a biometric ID. You can't make him say that. Right? You can't make him say which finger you use. But you can take the defendant I think one thing No, but because that is protected. No, I don't think it is. I think one way to think about this is everything I just said is definitely protected by the Fifth Amendment. You can't make him say that's my phone. You can't make him say I use a password or I use a finger or a face. Right, but this is the physical characteristics doctrine says that you can use a defendant's physical characteristics as part of the government's investigation. You can use those even though they reveal the defendant's connection to connection but not a full record of his mind. I mean I think I don't. I think you certainly a gun and a fingerprint on the right so you are connected to that gun. That's not getting into the mind in the way that getting into a cell phone or a diary would be. But it's not getting into the mind because the defendant has chosen to take information out of. So I think the defendant has chosen to take in the hypotheticals we are talking about. The defendant has chosen to take information out of their mind and put it somewhere. Once they do that, the Fifth Amendment self-incrimination privilege does not attach. So for example, a defendant who writes down their password and the government finds that password, there's no Fifth Amendment problem with the government taking that password and going into a computer. There is a Fifth Amendment problem with the government saying you need to tell me your password or I will do X, Y, or Z to you. That's where they Could we just like return to this case? I think it might even be different if this case was like pain where apparently the police just grabbed the person's thumb and put it on the phone reader. But the evidence, the testimony in this case is that something like the following happened which is that the officer said open this phone. When he puts his thumb on the reader, it doesn't just say this is my phone. It also says I know how to open it. It's this thumb instead of this finger. It's communicating all sorts of facts implicitly and it seems like this is much harder than the situation harder for you than the situation where you're just forcing the thumb onto the reader. Why is that wrong? So I have two responses. I think first goes to I think it was Judge Millett's question earlier about whether the fingerprint came in at trial. So the answer to that is how the government connected the phone to the defendant, whether any of that came in at trial. And the answer to that is no. The parties essentially stipulated to facts establishing the authenticity of the phone and there was no so it was not ever revealed to the jury. This is your inevitable discovery argument, right? And I was asking you why can we just do you have a response to why that is not testimony? So I think the second part of it is that the record is not the record is not clear exactly what and I'm not even sure the district court made clear factual findings about the precise interaction that went on between Mr. Schwartz and his son. That is true. And the agent basically testified he couldn't quite recall. If it is normal, what he would do is hand the phone and say open this in case you want to get some phone numbers on it so you can make a call after you're processed and then they snatch the phone from him. And so that is, again, it's as if handing the phone to the person and saying open the phone. I don't see how we could treat this case any differently but if you have something in the record Well, I think the best we have in the record is that the district court's ultimate ruling on the Fifth Amendment it basically concluded that it was compelled. So the district, I think that's a so I think that we're talking about compelled So because we're talking about I'll see now I've lost the plot a little bit here Can I just, well maybe I don't know if this is where you were going to go What my question is is about this inevitable discovery. My understanding is if this was a Fifth Amendment violation we ask what it led to and what it arguably led to at trial was the contents of the phone being admitted and your response is well, no, we got a second warrant. Your response is that warrant in fact relied on the products of the initial search and so it is not independent and not an inevitable discovery Right, and so your Honor, our response to that is that the second warrant even if you take out, so the second warrant does include some pictures of messages that were taken off the first search of the phone even if you take those out there's no reasonable probability that the magistrate judge would not have found probable cause because Can we do that? NICs and our cases like Holmes say you cannot rely on speculation in inevitable discovery cases. You have to rely on proven demonstrable facts so proven demonstrable facts would have been a warrant that didn't rely in any way Yeah, so the proven demonstrable I see your point So the point is like, wouldn't we be speculating that the judge would have approved the second warrant without this? So my understanding, and we can certainly supplement the record with the affidavits if that's helpful to the court My understanding is that everything that was contained in the first warrant You think you can supplement with the affidavit? I believe we can. I'm curious as to why it wasn't in the record. It was an oversight on our part and I apologize It is accessible on ECF It's about eight paragraphs driving the products of the initial search and so again the legal question remains, can we speculate that without that evidence the warrant still would have been? It's not speculation because the first everything that was contained in the first warrant the established probable cause is also contained in the second established probable cause so even if you there's no reasonable, it's not speculation to say even if you take out everything that comes from the interaction with the phone, the messages then there would still have been probable cause for the second the second warrant And the probable cause would have been? The probable cause would have been the FBI agent's investigation into Mr. Schwartz the videos of his activities on January 6th, essentially all the materials that before the search of Mr. Schwartz's house connected him to his crimes on January 6th You need to connect him to the phone So there's no challenge to the phone as I understand it, there is no challenge to seizing the phone because the phone is located in Schwartz's bedroom there was no question that the government could legally seize the phone where the legal issue that I understand has been raised is about opening the phone so the phone is connected as a fruit of the crime on January 6th I think that's our inevitable discovery Your argument is helpful It's not speculation because a judge effectively granted the same warrant without that information. That is correct Still, is there a case that you can point us to that allows us to engage in that type of counterfactual I do not have a case off the top of my head. I think that that is a I would say without a case I think that's a reasonable I think that's a reasonable way of analyzing the situation here. You said there was a stipulation in the case I see the phone as being his phone. Where's that stipulation? So the stipulation is at the beginning or during the testimony of the FBI agent who investigated Mr. Schwartz So during that during or before that testimony, the FBI agent the parties agreed to a stipulation that essentially says, you know, these are authentic items they were seized from Mr. Schwartz. They had proper chain of custody. And essentially that allowed the government to the jury that allowed the jury to never hear anything about the fingerprint issue and the circumstances of the search They stipulated to the admission of the phone but did not stipulate to ownership of the phone I do not believe they stipulated to ownership of the phone I think that the and again I apologize, I believe that to the extent that the ownership of the phone was in question, the fact that it was discovered in Mr. Schwartz's bedroom and that the subscriber information taken from the phone, the phone number the name associated with the account, etc. all match Mr. Schwartz So that's what created the ownership link, not anything from the fingerprint at trial Were his fingerprints on the phone? I'm sorry? Did they check to see if his fingerprints were on the phone beforehand or anything? I don't know. Generally these sorts of things are proven by things like subscriber information and the physical location of the phone If there are no further questions I'll just briefly, because Mr. Malley's counsel touched on the unanimity question I think just briefly we'd say that the verbs list in Section 111, we view them as just multiple means of committing the same offense As far as I'm aware, no circuit court has adopted Mr. Malley's view of 111 that breaks it out into different offenses requiring different mental states for each verb and I think that's shown by the fact that the jury instructions, there are five elements of the jury instructions The jury had to reach unanimity on each of the other jury instructions as well as the one with the verbs list So there was no need for unanimity instruction in this case and as we said in our brief the Second Circuit's decision in McIntosh is instructive Can I ask about Joinder?  In particular, I think it was Mr. Malley who was in the middle He just sort of passed the canister and he just passed it back and forth Do you have any cases that held Joinder when the relationship between these people was as thin as this one was? I don't have a case off the top of my head but I think it's worth emphasizing that Rule 8 Joinder test is very liberal. I understand but this thing would seem to be pushing I mean, you know, all I keep thinking of is, you know, you're in the movie theater and someone says pass this down to that person and you do I don't know this person or that person I just pass it down I think the movie theater analogy maybe doesn't doesn't hold up because we're in the context of a riot. Think about where think about what the indictment alleges These three defendants are in the middle of a mass of people who are trying to push their way into the Capitol. They're facing an armed line of police officers and they are told they are passing a weapon you can disagree on whether it's dangerous a weapon. They're passing a weapon back and forth and I think drawing reasonable inferences from the indictment, they were doing so to facilitate a criminal Could everybody from January 6th be joined and, I mean, can you just pick any random number of people from the tunnel and join them because they're in the tunnel opposing the police? No, there has to be some connection between them Again, this seems like the most minimal it's not that he did anything with it. He even testified that it was a water bottle. It wasn't clear to him what it was Well testimony, you know, we're just looking at the four corners of the indictment and so the indictment I'm just sort of saying there's a lot of people in that tunnel Maybe the two on the end that were working the pepper spray together but Mr. Malley in the middle is just Well, Mr. Malley is the conduit for the pepper spread He's taking an affirmative action to pass it up to someone. He's passing it back I think there is enough of a causal nexus that the three of them were What's the closest you can see to something this minimal being upheld under Roulette? Frankly, Your Honor Frankly, I don't have a case offhand Most Roulette cases are affirmed because of the test is so This is very liberal The test requires no Conspiracy allegation test only requires Are you aware of any issues with your experience? Yes, Attorney's Office I'm not aware of any I'm not aware of anything I can offer you If there are no further questions about any of the other issues I guess no Thank you Thank you very much Okay Something might go back in the same order I'll give you two minutes Thank you, Your Honor There is a certain irony in this case The government testified that using pepper spray for the least level of restraint in somebody's face directly is not deadly or dangerous and cannot cause serious bodily harm That is exactly what my client did He was not even point blank with these officers He held it over his head and sprayed it and all of a sudden this becomes deadly or dangerous and it's not because again, extreme physical pain has to be read with death or blindness and there's no hydraulic needling in this case I submit under Arrington he did not use it in a manner that could be deadly or dangerous Thank you Any other questions? All right Mr. Boyle, same thing, two minutes Please, Court I don't know that there's too much I can add that hasn't been already addressed The government did bring up the stipulation as to the authenticity of documents and other information at trial and it is true that we did stipulate the authenticity and admissibility of certain documents However, we never stipulated anything concerning the phone or its ownership or anything of that nature Our position is simply that the identification of the phone on the day of the arrest violated the Fifth Amendment Can you respond to the inevitable discovery argument? Because it seems at least facially compelling to say we know this second warrant would have been granted without the fruits of the initial search because the initial warrant authorized a search of the phone And I understand the logic behind that argument However, the granting of a warrant is both a factual finding and a determination by a magistrate judge that's made at a particular time and particular place based upon the evidence presented to them Speculating as to what a judge would have done is not an inevitable discovery. In fact, it completely swallows the entire Fourth and Fifth Amendment If you say, oh, we would have discovered this anyhow The fact of the matter is once the information was discovered pursuant to the first warrant the investigation was underway the agents already had that information and trying to go back in time and cross some I's and cross some T's you didn't initially is not an inevitable discovery I don't think there's anything else I have to present. Thank you Thank you, Thompson Mr. Schivelbein Just briefly, Your Honors In response to the court's questions about the pepper spray in the tunnel and there was some evidence that the pepper spray was deployed over the officer's head the government responded that the court could still find that it's a deadly or dangerous weapon in the manner in which it was used because it was used in a confined space where officers were not able to exit and they were there for several hours at a time That response sort of compels a finding where pepper spray is used not in a confined space where officers can retreat and it is not a deadly or dangerous weapon The record evidence in this case is that Mr. Malley used pepper spray Are you saying officers could have just retreated outside on the plaza? There was room for them to back up and there were other officers Correct, but there were other officers who would take the place and so what the government is saying is that when somebody is stuck in an area and they can't decontaminate or they can't at least back up from an area because they're confined, that is deadly or dangerous What the record evidence here is is that the way that officers use pepper spray every day, the way that the use of force continue and condone their use of pepper spray and the way that courts can repeatedly say this is reasonable amounts of force which is pepper spray for brief periods of time from a modest distance in ventilated areas exactly what Mr. Malley used is not deadly or dangerous Any other questions? Thank you, Your Honors. Mr. Madden, you were appointed by this court to represent Mr. Brown in this case and we are very grateful for your assistance Thank you, Your Honor. Appreciate that.
judges: Millett; Garcia; Rogers